J-S24004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY SCOTT THOMPSON | : | |
| | : | |
| Appellant | : | No. 1087 MDA 2017 |

Appeal from the Judgment of Sentence January 31, 2017
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0000998-2016

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 29, 2018**

Appellant, Zachary Scott Thompson, appeals from the judgment of sentence entered on January 31, 2017, as made final by the denial of Appellant's post-sentence motion on June 8, 2017.  We affirm.

The trial court ably summarized the underlying facts of this case.  As the trial court explained:

> Around Thanksgiving of 2016, [H.F. (hereinafter "the Victim")] (then 16) was visiting [Appellant] (then 18 and her cousin) at [Appellant's] home and while there began drinking alcohol he provided.  After drinking more than she had ever drunk before, she became nauseous and didn't feel right. She lay down in [Appellant's] bed at which point he lay down behind her and began to touch her vagina and her butt without her consent.  Not knowing how to respond to this unwanted touching by her cousin, the [V]ictim attempted to sleep.  Ultimately, [Appellant] went to sleep and the event ended. . . .
>
> The second . . . incident occurred [] at [Appellant's] home during a birthday party for [Appellant's] younger brother that

featured copious underage drinking by [Appellant] and the [V]ictim. . . . After too many shots of [whiskey], the [16-year-old Victim] became sick and was taken to the shower by the girlfriend [of Appellant's father] and another adult female who washed the vomit off of [the Victim]. Then, she was dressed, taken to [Appellant's] bedroom and positioned on his bed with a bowl and a towel nearby should the vomiting recur. When [Appellant] returned to his bedroom . . . he proceeded to force himself on the [V]ictim at various times throughout the night.

Trial Court Opinion, 11/8/17, at 2-3 (internal citations omitted).

Specifically, the Victim testified:

I had fallen asleep, and there [were] about four people in the room. I know it was [Appellant] and a few other people I didn't know. And then I fell asleep, and throughout the night I was in and out of consciousness.

The first time I woke up, no one was around except for [Appellant], and he was passed out next to me. And then I woke up again later, and he was touching me, and I felt his mouth on my lips. And I had fallen asleep, and I woke up and he was trying to push my head down on him. And I was trying to put my hand on him to get him to stop, and then after [a while] he did stop. And then I had fallen back to sleep, and then I woke up on my stomach . . . and my pants were pulled down. And he was on top of me, and he was hurting me. . . . His penis was inside of me. . . . He was in my anus [and he was g]oing in and out of me.

N.T. Trial, 10/25/16, at 46 and 51-52.

The Victim testified that, when she woke up the next morning, "[m]y butt hurt, my vaginal area hurt, my . . . inner thigh was hurting." *Id.* at 53. She testified that none of those "areas hurt prior to that night." *Id.*

Appellant was arrested and, following trial, the jury found Appellant guilty of one count of sexual assault, one count of indecent assault, and two

counts of corruption of minors.[1, 2]  N.T. Trial, 10/26/16, at 157-159.  On

January 31, 2017, the trial court sentenced Appellant to serve an aggregate

term of three to six years in prison, followed by four years of probation, for

his convictions.  N.T. Sentencing Hearing, 1/31/17, at 13-14.

On June 8, 2017, the trial court denied Appellant's timely post-sentence

motion.  Appellant filed a timely notice of appeal on July 7, 2017.  Appellant

raises one issue on appeal:

> Did the Commonwealth present sufficient evidence on every
> element of the crimes to adequately support the jury's guilty
> verdicts on the charge of sexual assault, corruption of a
> minor, or indecent assault (w/out consent of another)?

Appellant's Brief at 6 (some internal capitalization omitted).

We review Appellant's sufficiency of the evidence challenges under the

following standard:

> The standard we apply in reviewing the sufficiency of the
> evidence is whether viewing all the evidence admitted at trial
> in the light most favorable to the verdict winner, there is
> sufficient evidence to enable the fact-finder to find every
> element of the crime beyond a reasonable doubt.  In applying
> the above test, we may not weigh the evidence and substitute
> our judgment for [that of] the fact-finder.  In addition, we
> note that the facts and circumstances established by the
> Commonwealth need not preclude every possibility of
> innocence.  Any doubts regarding a defendant's guilt may be
> resolved by the fact-finder unless the evidence is so weak
> and inconclusive that as a matter of law no probability of fact

---

[1] 18 Pa.C.S.A. §§ 3124.1, 3126(a)(1), and 6301(a)(1)(i), respectively.

[2] The jury found Appellant not guilty of rape and involuntary deviate sexual
intercourse.

may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

Appellant's Rule 2116 "statement of questions involved" purports to challenge the sufficiency of all of his convictions. However, the argument section of Appellant's brief only contends that the evidence was insufficient to support his sexual assault and indecent assault convictions. **See** Appellant's Brief at 9-10. Therefore, Appellant has waived any claim that the evidence was insufficient to support his two corruption of minors convictions. *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief").

First, Appellant claims that the evidence was insufficient to support his sexual assault conviction. In relevant part, the crime of sexual assault is defined as follows:

a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

- 4 -

18 Pa.C.S.A. § 3124.1.[3]

On appeal, Appellant claims that the evidence was insufficient to support his sexual assault conviction because the Victim "did not say 'no' or 'yes', and just groaned during the relevant episode of anal intercourse." Appellant's Brief at 9. This claim is meritless.

The evidence is clearly sufficient to support Appellant's sexual assault conviction because the Victim testified that, on the night of the crime, she woke to Appellant on top of her, with his penis inside of her anus, and Appellant "[g]oing in and out of" her. N.T. Trial, 10/25/16, at 46 and 51-52. Thus, Appellant's claim that the Commonwealth failed to prove the element of "lack of consent" plainly fails, as the Victim was asleep when Appellant began the sexual intercourse. As such, the Victim could not have consented – and Appellant could not have believed she consented – to the sexual intercourse. Appellant's first claim on appeal thus fails.

---

[3] The term "sexual intercourse" is defined in the following manner: "[i]n addition to its ordinary meaning, [the term 'sexual intercourse'] includes intercourse *per os* or *per anus*, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101. "Deviate sexual intercourse" is defined as: "[s]exual intercourse *per os* or *per anus* between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." ***Id.***

Second, Appellant claims that the evidence was insufficient to support his indecent assault conviction. Appellant was convicted of indecent assault under 18 Pa.C.S.A. § 3126(a)(1). This section declares:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so without the complainant's consent.

18 Pa.C.S.A. § 3126(a)(1). The term "indecent contact" means "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

Appellant's argument on appeal is sparse. *See* Appellant's Brief at 9-10. To the extent that Appellant raises a cognizable sufficiency of the evidence claim on appeal, we understand Appellant's claim to be that the evidence was insufficient to prove that the Victim did not consent to his touching during the first incident, when Appellant simply went into the Victim's bed and began touching her vagina and buttocks. *See id.* at 10. This claim fails.

At trial, the Victim testified as to Appellant's first assault:

> A: We were having a Thanksgiving dinner at my house with the family . . . and then we went back to [Appellant's] house. . . . We were hanging out, watching TV. We ate. And then me, [Appellant, and Appellant's brother] were hanging out in [Appellant's] room.
>
> . . .
>
> Q: What happened while you were in [Appellant's] room?

- 6 -

A: We were drinking for [a while] and talking, and then eventually [Appellant's brother] went up to his room.

. . .

Q: What happened after [Appellant's brother] left?

A: We continued to drink, and then I laid down.

Q: Prior to [lying] down, how many drinks do you think you had had?

A:  I'm not sure.

Q: How did you feel?

A: I was nauseous, and I didn't feel all right.

Q: What happened when you laid down?

A: [Appellant] had gotten in the bed and laid behind me.

. . .

Q: Did you have your clothes on?

A: Yes.

Q: Did he have his clothes on?

A: Yes.

Q: What happened next?

A: He started to touch me.

Q: Where did he touch you?

A: He was touching my butt.

Q: Was that on top of your clothes or underneath your clothes?

A: On top.

Q: Did you say anything?

A: No. I just laid there.

Q: What happened next?

A: He continued to touch me.

Q: Did he touch you anywhere besides your butt?

A: He was touching my vagina.

Q: On top of or underneath your clothes?

A: On top. I don't remember if he went under.

Q: Did you say anything at that point?

A: I just tried to sleep.

Q: Why did you try to sleep?

A: I didn't know how to react because he's family, and I was drinking a lot.

Q: Did you want him touching you?

A: No.

Q: How long do you think that lasted?

A: I don't think it was very long that I remember.

Q: Now, when you said you had been drinking and you don't know how much, how was the alcohol affecting you?

A: It made me feel really dizzy. I couldn't really see straight. It was really gross, and it tasted very strong, like pure alcohol, like rubbing alcohol.

Q: And you said it was affecting your ability to see. What other things was it affecting?

A: It made me very tired.

Q: Had you ever felt like that before?

A: No.

Q: Had you ever drank like that before?

A: No.

Q: How did this whole situation stop?

A: He eventually stopped and went to sleep, and I just laid there and fell asleep.

Q: Did you say anything to make him stop?

. . .

A: No.

N.T. Trial, 10/25/16, at 36-41.

On appeal, Appellant claims that the evidence was insufficient to establish that the touching was done without the Victim's consent. **See** Appellant's Brief at 10. This claim is meritless, as the Victim specifically testified that she did not consent to Appellant's touching. N.T. Trial, 10/25/16, at 40. Further, Appellant could not have believed that the Victim consented to the touching because Appellant did not obtain the Victim's verbal consent at any point and Appellant simply got into the Victim's bed, while the Victim was trying to sleep, and began touching her vagina and buttocks. **Id.** at 39-40. Under these circumstances, the evidence was plainly sufficient to prove that Appellant's touching was done "without the [Victim's] consent." **See** 18 Pa.C.S.A. § 3126(a)(1). Appellant's claim on appeal thus fails.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2018